**Pages 1 - 19**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
UNITED STATES OF AMERICA,     )
                              )
         Plaintiff,           )
                              )
   VS.                        )      NO. CR 15-00592 VC
                              )
AHMADREZA AMIRI,              )
                              )
         Defendant.           )
_____)
```

San Francisco, California
Tuesday, November 28, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
        BRIAN J. STRETCH
        United States Attorney
        150 Almaden Boulevard - Suite 900
        San Jose, California   95113
  **BY:  MARISSA HARRIS**
      **ASSISTANT UNITED STATES ATTORNEY**

For Defendant:
        FARELLA, BRAUN & MARTEL LLP
        235 Montgomery Street - 18th Floor
        San Francisco, California   94104
  **BY:  JESSICA K. NALL**
      **AVIVA J. GILBERT**
      **ATTORNEYS AT LAW**

Also Present:        **Charlie Mabie, U.S. Probation**

Reported By:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
            Official Reporter

```
 1   Tuesday - November 28, 2017                           11:32 a.m.
 2                          P R O C E E D I N G S
 3                               ---oOo---
 4          THE CLERK:  Calling Case Number 15-cr-00592, U.S.A.
 5   versus Ahmadreza Amiri.
 6       Counsel, please step forward and state your appearances
 7   for the record.
 8          MS. NALL:  Good morning, Your Honor.  Jessica Nall and
 9   Aviva Gilbert on behalf of Mr. Amiri, who is present and not in
10   custody.
11          THE COURT:  Good morning.  Good morning, Mr. Amiri.
12          THE DEFENDANT:  Good morning, Your Honor.
13          MS. HARRIS:  Good morning, Your Honor.  Marissa Harris
14   for the United States.
15          THE COURT:  Good morning.
16          THE PROBATION OFFICER:  And Charlie Mabie,
17   U.S. Probation.
18          THE COURT:  Good morning.
19       So I guess the first question I have is:  There was a
20   motion to file the Government's supplemental memorandum under
21   seal.
22          MS. HARRIS:  Correct, Your Honor.
23          THE COURT:  The motion is granted.
24          MS. HARRIS:  Thank you, Your Honor.
25          THE COURT:  Is anybody moving to seal these
```

1  proceedings or no?

2  **MS. HARRIS:** No. I don't believe we're going to get
3  into the specific details of Mr. Amiri's assistance to the
4  Government. That's why I put it in a sealed supplemental
5  filing to make the proceedings as public as possible.

6  **THE COURT:** Okay. And then there was a request from
7  the Defense to continue the sentencing, and one of the reasons
8  you gave was that this is a case where restitution and -- where
9  everything connected with the sentence should be done at the
10 same time because your position is it's kind of -- it should be
11 a restitution-driven sentence.

12 You had other arguments to continue the sentencing that I
13 didn't quite understand. You seem to be saying that you were
14 caught by surprise by something the Government said in its
15 papers or something like that, but I didn't quite understand
16 it. So do you want to give further explanation to that?

17 **MS. NALL:** Yes. Thank you, Your Honor.

18 Yes, if I may, the reasons that we've requested a
19 continuance, and we believe that that would be in the interests
20 of justice here, include that efficiency, as you mentioned, to
21 be able to understand the restituionary issues all at the same
22 time. We're going to have to come back here anyway.

23 The longer Ms. --

24 **THE COURT:** I will tell you that I -- you know, I
25 generally think it's better to do the restitution at the

1    sentencing and do it all at the same time and consider it all
2    holistically, but the law kind of contemplates that it will be
3    done later or can be done later, and that seems to be the
4    practice.  It seems like usually that can gets kicked down the
5    road.
6         I'd prefer not to do that, and I'm considering adopting
7    something in my standing order saying, you know, the Government
8    needs to be prepared on restitution on the date of sentencing.
9         But as we sit here today, I wonder if, you know, the
10   restitution issue is enough on its own to justify continuing
11   the sentencing.
12        **MS. NALL:**  Your Honor, I have some other reasons that
13   may be helpful to that analysis, and that includes what you had
14   alluded to regarding the Government's position in their
15   supplemental motion filed under seal, so I don't want to go
16   into too much detail on that in open court; but it has raised
17   some very significant issues that require additional analysis
18   by our Defense team and advice to Mr. Amiri about what his
19   reaction to that may be.
20        And, in fact, there may be a -- and I'm not sure yet
21   whether this is anything we want to do, but there is a
22   potential that we would move -- we might want to consider a
23   motion to withdraw the plea based on the result that we have,
24   you know, gotten to here today given that the mandatory minimum
25   that's applying is, we feel strongly, not in the interest of

1  justice and that there may have been some pressure, undue
2  pressure, to enter the plea at the time that it was entered
3  based on some of Your Honor's orders back in January.
4      I'm not saying we want to do that right this instant, but
5  it's certainly something we need to consider and to advise
6  Mr. Amiri about, and we need time to do that, continue to
7  discuss, have meet-and-confer discussions with the Government
8  regarding those issues.
9      **MS. HARRIS:**  Your Honor, I would speak on both of
10 those issues raised by counsel just now.
11     Regarding the withdrawal of the plea, I believe that the
12 Plea Agreement specifically forbids that.  The Government's
13 motion for a 5K and/or a 3553(e) motion is in the Government's
14 sole and exclusive discretion.
15     The Government, through its supplemental memo that was
16 filed under seal, did assess Mr. Amiri's cooperation that was
17 given; and that assessment has now wound its way from the
18 trial-level attorney, which is me, through my supervisors,
19 through the actual 5K committee that evaluates these types of
20 situations, and they have given their determination and they
21 have authorized me to make the departure that I made in the
22 supplemental memo.  I do not believe at this time that there's
23 going to be additional information that would alter that
24 determination.
25     And also I believe that the defendant's Plea Agreement

1  specifically forbids him -- forbids this type of circumstance
2  where they're unsatisfied with the recommendation that's made
3  and seek to withdraw the plea on that basis.
4      Regarding the restitution issue, as I noted in my publicly
5  filed sentencing memo, there is a statutory basis for the
6  continuance as to the restitution.  And just factually, the
7  Government did make best efforts to come up with a
8  comprehensive list of restitution claims.
9      But, again, I will note that there were two instances
10 where Mr. Amiri was found with multiple receipts, multiple
11 receipts, multiple victims.  This took a lot of work on our
12 part to even condense it to this level, and still we're waiting
13 for people to get back to us with where they want their money
14 sent and to whom the restitution should be addressed and even
15 the amounts that are ultimately being requested.
16     You know, again, I had aimed to get it all ready for today
17 but, unfortunately, it just didn't work out that way in terms
18 of, you know, people getting back to me, people getting back to
19 the agent, and people getting back to the clerk that I had
20 working on this basically 24/7.
21     So that is why we are requesting the continuance to come
22 back in about 60 days.  I can't really represent that I would
23 oppose a continuance of a sentencing issue until the 60 days.
24 The Government is prepared to proceed today with the
25 defendant's actual sentencing; but as to the restitution issue,

1  that's the grounds upon which we request the continuance, at
2  least for that issue.
3       If the Court decides to do it on the same day, both the
4  sentencing and the restitution, that is the Court's decision.
5       **THE COURT:**  And you don't oppose that, okay.
6       One question I had that was not addressed in the
7  briefing -- maybe it wasn't addressed in the briefing because
8  the answer is obvious, but I just don't know the answer -- is
9  when the Government makes a motion for a departure based on
10 cooperation -- what is it?  5K1.1?
11      **MS. HARRIS:**  Correct, Your Honor.
12      **THE COURT:**  -- the language of 5K1.1 and of 18 U.S.C.
13 3553(e) is a bit vague on the following issue:  Let's say the
14 Government makes a motion, as you have done, for basically a
15 two- or three-level downward departure based on assistance but
16 you do not make a motion for a sentence that would be below the
17 mandatory minimum.
18      Does the fact that you have made the motion for a
19 departure at all under 5K1.1 trigger my authority to go below
20 the mandatory minimum even if the Government is not asking me
21 to go below the mandatory minimum?
22      The language of the sentencing guideline and the language
23 of the statute is vague on that point, and does anybody know
24 the answer to that question?
25      **THE PROBATION OFFICER:**  Your Honor, I called the

1  Sentencing Commission yesterday, the help line, and spoke to
2  one of the attorneys there and they said that the Court is
3  basically not allowed to go below the mandatory minimum without
4  a 3553(e), something under that, being filed by the Government.
5         **MS. HARRIS:**  That is my office's understanding and
6  interpretation of the law as well.
7         **THE COURT:**  Okay.
8         **MS. NALL:**  We have not had an opportunity, Your Honor,
9  to fully research or brief that issue, and it's getting to the
10 heart of the matter here about why we're here and talking about
11 withdrawal, and I can talk more about that; that this is just,
12 you know, a situation where, you know, it's kind of a
13 Kafkaesque kind of situation where we have a 5K but we still
14 have the mand. min. and it's still essentially a 5K with a
15 little strength here, which is problematic.
16     And certainly I think the issue Your Honor has raised is
17 one that we've all grappled with in our discussions but have
18 not had a chance to fully look at what the courts have said.
19 The Sentencing Commission, their position is obviously
20 important but it's not going to be binding.
21        **THE COURT:**  I'm not going to proceed with a sentencing
22 based on a conversation between the probation officer and
23 somebody at the help desk in the Sentencing Commission.  They
24 are very helpful over at the Sentencing Commission and, you
25 know, but, I mean, that's not a substitute for thorough

1  research and independent analysis of the issue.
2      So I think -- sorry.  Were you going to say something?
3          **THE PROBATION OFFICER:**  I'm sorry, Your Honor.  Well,
4  there is something, but I think -- I'm sorry to interrupt your
5  thought.
6          **THE COURT:**  No.  Please go ahead.
7          **THE PROBATION OFFICER:**  Your Honor, this was not
8  about -- I mean, it's about the continuance and all that, and
9  maybe I want to take the bully's pulpit and just say that, you
10 know, Your Honor, this is -- I'm retiring in two days.  This is
11 the last --
12         **THE COURT:**  Congratulations.
13         **THE PROBATION OFFICER:**  Thank you.
14     This is the last sentencing I have in federal court and
15 usually, you know, Probation -- the judge will ask at a
16 sentencing can Probation say something.  It looks like I'm not
17 going to have that opportunity at the final sentencing.  I
18 might be in the gallery, but I certainly won't be in that
19 position to speak.
20         **THE COURT:**  Okay.
21         **THE PROBATION OFFICER:**  But in all the years,
22 Your Honor -- and, I mean, I'm -- probably in 20 years I do 50,
23 60 reports a year, so that's a lot of reports that I've written
24 and if I speak about this client, you know, I can't get into
25 what the Government's mind is.  I can only read what they have

1    published and what they have done and why they come up with
2    their recommendation, but it's -- I would say it's been on both
3    hands that I can count the amount of time that somebody has
4    done work ahead of time, I mean, out of all the years I've been
5    doing this somebody has put effort into being able to pay
6    restitution, and actually I'm going to go out on a limb and
7    maybe say that this is the client in 20 years that has done the
8    most to improve their life and taking care of things.
9        You know, everyone acknowledges that Probation is here to
10   enforce the sanctions of the Court and ensure the safety of the
11   community.  We often forget or the parties often forget or the
12   public doesn't know that here in the federal court we are
13   trying to make people whole again, the individuals whole.  I
14   mean, get them to be part of the community, to be respectful of
15   the law, their family, to contribute.  And this defendant has
16   been on an incredible roll.
17       And to be honest with you, you know, if it shakes out that
18   he does get custody time, sure, it's going to endanger his
19   employment and I think some things that I can't see an employer
20   holding a spot open for two or three years as what the
21   recommendation is, but I'm pretty sure he's not going to return
22   to drugs at this point.  The fact that he has fatherhood coming
23   up and has done such -- I think made incredible progress in the
24   last year and a half.
25       And I would -- if this were to be continued, by all means

1    I think these are issues that need to be taken care of, that
2    the Defense looks at what they think as maybe how they handle
3    their entrance of the plea or whatever happened and also the
4    restitution issues clearly, because here's someone who's worked
5    towards restitution.
6         I just wanted to put a kernel of something for everyone to
7    think about is if this were to be put over for a longer time if
8    he's pending his serving custody time, I would think that
9    really society is served and the community is served by him
10   perhaps staying out until the birth of his child, which would
11   be May, which is six months, only in that during that time not
12   only will he be able to -- will he be able to bond with his
13   child, it will allow him to, A, continue to put money into this
14   trust account that he has been working with his attorney on and
15   also put together some money -- save some money up to help his
16   significant other and child during this time that he's going to
17   be gone.
18        People every day get sentenced.  Some people are in
19   custody and they're sentenced, and their children are born when
20   they're not there.  Everyone's circumstances are different, and
21   we look at this as individuals; and in this case, boy, I wish I
22   probably could have done -- said something like this or done
23   something more to help somebody who's in custody, but if I have
24   someone who's out of custody and, by all means, we have a
25   chance to do things, I think it's -- sometimes we take little

1   risks or we take little chances on people to see is this -- the
2   six months, I mean, in my mind, I can't see him messing up.
3       And I would hope that while all this gets resolved, he can
4   continue to bond and do well and maybe even make some more
5   plans with his employer and see what it is.
6       I mean, I would proudly say that this is a defendant that
7   has done -- once again, I'm not saying this glibly -- more in
8   20 years than anyone else I think has.  There's been no denial.
9   There's no excuses.  I mean, he doesn't even blame his
10  addiction for it.  I mean, he just says, "I made bad choices.
11  I was an addict and I made bad choices."  Not, "I made bad
12  choices because I was an addict."
13      I mean, Your Honor, it's been an honor to work on this
14  case and to present this information to you, and I thank you
15  for the opportunity.
16              **THE COURT:**  Thank you.
17      Give me one second.  I want to look at something.
18                      (Pause in proceedings.)
19              **MS. HARRIS:**  Your Honor, I will also note that one of
20  the victims, JC, is here in court today.
21              **THE COURT:**  Okay.  Thank you.
22      I am going to continue the sentencing hearing, so I will
23  not hear from -- I didn't know if JC wanted to be heard or not.
24  You will have an opportunity to be heard if you wish, but I'm
25  going to continue the sentencing hearing so it won't be today.

1     I guess what I will say, though -- what I will say is that
2  if JC does wish to be heard today so that he doesn't have to
3  come back to court next time, on reflection -- I'm kind of
4  changing my mind now -- I mean, if JC wants to be heard today
5  and prefers to do that so that he doesn't have to come back to
6  court next time, I'm happy to proceed that way too.
7         **MS. HARRIS:**  Sir, what is your preference?
8         **JC:**  I don't need to speak if the Court has my written
9  statement.
10        **THE COURT:**  I do.  Thank you.
11        **MS. HARRIS:**  Would you like to be heard today or would
12 you like to be heard at another time?
13        **THE COURT:**  He said he doesn't need to speak at all.
14        **MS. HARRIS:**  Okay.
15        **THE COURT:**  He's happy with just having provided the
16 written statement.
17        **MS. HARRIS:**  Okay.
18        **THE COURT:**  Give me one second here.  There's one
19 other thing I wanted to look at.
20                  (Pause in proceedings.)
21        **THE COURT:**  I was looking for the Plea Agreement and
22 I'm not finding it at the moment, but -- oh, I know where it
23 is.  Hold on.
24                  (Pause in proceedings.)
25        **MS. NALL:**  We can hand a copy up, Your Honor.

1     **THE COURT:**  I've got it in here.  It will just take a
2  quick second.
3              (Pause in proceedings.)
4     **THE COURT:**  Okay.  I know that the Plea Agreement
5  contains a provision in which Mr. Amiri agreed that he would
6  not request participation in the CAP program, but I'm curious
7  about your opinion on whether he would be an appropriate person
8  to participate in the CAP program.
9     **THE PROBATION OFFICER:**  In many ways, Your Honor, I
10 believe that he would.  I recently had a case over in Oakland
11 with another judge where the Plea Agreement says that they
12 wouldn't participate and they weren't -- they, quote/unquote,
13 agreed that he wouldn't be eligible to participate.
14    Now, he may not be eligible to participate in CAP because
15 of -- his prior arrests may have been one of the criteria, but
16 yet --
17    **THE COURT:**  I don't know about that.  I'm not sure
18 that prior arrests or convictions preclude somebody from
19 participating in the CAP program.
20    **THE PROBATION OFFICER:**  I had somebody with -- it was
21 an actual drug-related charge and they had a criminal history
22 that was on the same level as Mr. Amiri and the Court put him
23 into the CAP program, and they've been in the CAP program now
24 despite the Plea Agreement saying.
25    **THE COURT:**  Who was that judge?  Was that Judge White?

1   **THE PROBATION OFFICER:** No. That was judge -- that
2   was our chief judge, Your Honor, has put him into the CAP
3   program.
4       **MS. HARRIS:** Your Honor, I don't think he's eligible
5   for CAP. I believe that CAP is limited to U.S. citizens. I
6   don't think that the defendant is a citizen.
7       **THE COURT:** Oh. Is that a limitation?
8       **THE PROBATION OFFICER:** Your Honor, I'd ask -- I even
9   have a supervisor here and we're unsure of that, but I'm sure a
10  quick phone call we can find out whether or not that U.S.
11  citizen is an issue or not.
12      **THE COURT:** Okay. Well, here's --
13      **THE PROBATION OFFICER:** Because he's not -- excuse
14  me -- the defendant isn't here illegally.
15      **THE COURT:** Right.
16      **THE PROBATION OFFICER:** Clearly I can understand if
17  someone was not here legally in this country.
18      **THE COURT:** Right.
19      **THE PROBATION OFFICER:** I mean, but we can certainly
20  find that answer out.
21      **THE COURT:** Okay. Well, here's what I'm going to do,
22  is I'm going to continue the sentencing hearing and I'm going
23  to ask the parties to explore a couple of questions. And
24  you're free to submit supplemental briefs on anything that
25  you -- you're free to submit a supplemental brief on anything

1   that you like, but at a minimum your supplemental brief should
2   include, number one, is there any possibility of the defendant
3   participating in the CAP program.  And I understand that
4   Mr. Amiri has agreed not to request participation in the CAP
5   program.  I'm not asking you if you're requesting participation
6   in the CAP program.  I'm asking whether it's possible, whether
7   I would have the authority to refer him on my own to the CAP
8   program.
9         Number two, does the Government's 5K1.1 motion trigger my
10  authority to sentence below the mandatory minimum?  As I said,
11  my reading of the guideline provision and 18 U.S.C., Section
12  3553(e), is that the language of those two provisions are
13  ambiguous on that question.
14        I assume that case law has addressed it, but I haven't had
15  an opportunity to do that research yet so I'd like you to
16  address that question.
17        And then, number three, what should the restitution be?
18  I'd like to do restitution together with everything else.  So I
19  want, you know, everyone's final answer on what restitution
20  should be.
21        So in light of -- and then, as I said, if there's anything
22  else that you wish to address in a supplemental sentencing
23  memorandum, you should feel free to do so, but I would like
24  both sides to address those three questions at least.
25        So in light of that, when should your briefs be due?  I

```
 1   think maybe the Government's brief should come first so that
 2   the defendant has an opportunity to respond to the Government's
 3   kind of final position regarding restitution.  So when should
 4   the briefs be due and when should the sentencing hearing take
 5   place?
 6           MS. HARRIS:  Well, Your Honor, I had asked in my
 7   filings for a 60-day continuance regarding the restitution
 8   issue.  So my instinct is that the briefs should be due with
 9   the additional questions that the Court has asked us to
10   consider at that time.
11           THE COURT:  Okay.
12           MS. HARRIS:  Just let me quickly find the date that I
13   had asked for.
14           MS. GILBERT:  January 31st, I think.
15           MS. HARRIS:  January 31st, 2018.
16           THE COURT:  For the continued hearing or for your
17   brief?
18           MS. HARRIS:  Well, that's -- yeah, that was the amount
19   of time that I had requested in order to settle the restitution
20   claims with everyone.  So I would request that my filings be
21   due on that date.
22           THE COURT:  Okay.  January 31st?
23           MS. HARRIS:  Correct.
24           THE COURT:  Okay.  So the Government's supplemental
25   memorandum will be due January 31st.
```

1    And then when would you like to respond?

2    **MS. NALL:**  Your Honor, it would be nice to have at
3    least a few weeks to be able to respond.  30 days would be even
4    better.

5    **THE COURT:**  All right.  So the defendant's response
6    will be -- or defendant's supplemental memorandum will be due,
7    like, four weeks from January 31st.

8    **THE CLERK:**  February 28th.

9    **THE COURT:**  And then the sentencing hearing can take
10   place in March, mid-March.

11   **THE CLERK:**  The 13th or 20th.

12   **MS. HARRIS:**  Either day is fine for the Government.

13   **MS. NALL:**  Just one second, Your Honor.

14              (Pause in proceedings.)

15   **MS. NALL:**  The 20th would be preferable for us,
16   Your Honor, as I'm traveling the prior week.

17   **THE COURT:**  Okay.  So the sentencing hearing will be
18   March 20th.

19       And, you know, and then maybe another thing you can
20   address -- I don't know if this needs to be addressed in the
21   briefs or if it can just be discussed at the sentencing
22   hearing -- is the propriety of a self-surrender date, you know,
23   following the birth of Mr. Amiri's child, if that is what is
24   requested.

25       I mean, I can imagine a desire to -- if there is going to

1  be custody, a desire to sort of get on with it.  But, in any
2  event, think about that issue, address it in the briefs if you
3  wish, or just think about it and talk to me about it at the
4  sentencing hearing.
5          **MS. HARRIS:**  All right.
6          **MS. NALL:**  Thank you, Your Honor.
7          **MS. HARRIS:**  Thank you.
8          **MS. NALL:**  Will do.
9          **THE COURT:**  Thank you.  Thank you for your service?
10         **THE PROBATION OFFICER:**  All right.  Thank you, sir.
11 It's been an honor, sir.
12              (Proceedings adjourned at 12:00 p.m.)
13                          ---oOo---
14
15              **CERTIFICATE OF REPORTER**
16         I certify that the foregoing is a correct transcript
17 from the record of proceedings in the above-entitled matter.
18
19 DATE:   Monday, February 12, 2018
20
21
22
23   _____
24      Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                U.S. Court Reporter
25