PAGES 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JUDGE VINCE CHHABRIA

```
UNITED STATES OF AMERICA,          )
                                   )
                    PLAINTIFF,     ) NO. CR15-592 VC
VS.                                )
                                   )  SAN FRANCISCO,
                                   )  CALIFORNIA
                                   )  TUESDAY
AHMADREZA AMIRI,                   )  MARCH 20, 2018
                                   )
                    DEFENDANT.     )
_____)  4:00 O'CLOCK P.M.
```

## TRANSCRIPT OF PROCEEDINGS

## APPEARANCES:

FOR PLAINTIFF:
**ALEX TSE, ACTING UNITED STATES ATTORNEY**
150 ALMADEN BOULEVARD - SUITE 900
SAN JOSE, CALIFORNIA 95113
**BY:  MARISSA HARRIS, ASSISTANT UNITED STATES ATTORNEY**


FOR DEFENDANT:
**FARELLA, BRAUN + MARTEL, LLP**
235 MONTGOMERY STREET - 18TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
**BY:  JESSICA K. NALL, ATTORNEY AT LAW**
     **AVIVA J. GILBERT, ATTORNEY AT LAW**


PROBATION OFFICER:  CATHERYN GRIER


*REPORTED BY:    KATHERINE WYATT, CSR 9866, RMR, RPR*

```
1    MARCH 20, 2018                    4:00 O'CLOCK P.M.

2

3                        P R O C E E D I N G S

4         THE CLERK:  CALLING CASE NUMBER CR15-00592, USA VERSUS

5    AHMADREZA AMIRI.

6         COUNSEL, PLEASE STEP FORWARD, AND STATE YOUR APPEARANCES FOR

7    THE RECORD.

8         MS. HARRIS:  GOOD AFTERNOON, YOUR HONOR.  MARISSA

9    HARRIS FOR THE UNITED STATES.

10         THE COURT:  AND THANK YOU FOR WAITING.

11         MS. NALL:  GOOD AFTERNOON, YOUR HONOR.  JESSICA NALL

12    AND AVIVA GILBERT FOR MR. AMIRI, WHO IS PRESENT IN THE COURT.

13         THE COURT:  GOOD AFTERNOON.

14         GOOD AFTERNOON, MR. AMIRI.

15         THE PROBATION OFFICER:  CATHERYN GRIER WITH UNITED

16    STATES PROBATION, YOUR HONOR.

17         THE COURT:  GOOD AFTERNOON. SO I'LL JUST BE FULLY

18    TRANSPARENT ABOUT THIS.  I PICKED UP THE PHONE LAST NIGHT AT

19    ABOUT 9:00 P.M. AND I CALLED JACKIE CORLEY, WHO IS ONE OF THE

20    JUDGES ON THE CAP PROGRAM.  AND THE REASON I CALLED HER WAS TO

21    GET A SENSE OF WHETHER, YOU KNOW, CAP IS A TOTAL NONSTARTER.

22    LIKE WOULD THEY BE MAD AT ME IF I REFERRED THIS CASE FOR A CAP

23    ASSESSMENT.

24         THE ANSWER TO THAT QUESTION IS THAT IT MAY BE DOUBTFUL, BUT

25    IT IS NOT OUT OF THE QUESTION.  AND SO WHAT I -- HERE'S WHAT I
```

```
1    THINK ABOUT THIS CASE.  WE HAD A PROBATION OFFICER WHO TOLD US

2    LAST TIME WE WERE HERE THAT IN HIS 20 YEARS HE HAS NEVER SEEN A

3    DEFENDANT MORE WORTHY OF LENIENCY.  HE'S NEVER SEEN A MORE

4    APPROPRIATE CANDIDATE FOR GETTING OUT FROM UNDER A PRISON

5    SENTENCE.

6        AND EVERYTHING THAT HAS BEEN SUBMITTED TO ME IN THIS CASE IS

7    CONSISTENT WITH THAT ASSERTION BY THE PROBATION OFFICER.

8        I UNDERSTAND THAT IT IS IN THE GOVERNMENT'S CONTROL WHETHER

9    TO FILE A 3553 (E) MOTION OR NOT.  I UNDERSTAND THAT THERE IS AN

10   ISSUE, THIS ISSUE IN THE CAP FAQ'S ABOUT SUBJECT TO REMOVAL.

11       MY SENSE IS THAT THAT DOES NOT CATEGORICALLY PRECLUDE

12   MR. AMIRI FROM PARTICIPATING IN CAP.  IT'S AN ISSUE FOR THE CAP

13   JUDGES TO CONSIDER, BUT IT DOES NOT CATEGORICALLY PRECLUDE

14   MR. AMIRI FROM PARTICIPATING.

15       MY TAKE -- AND THIS IS GOING TO BE UP TO THE CAP JUDGES.

16   BUT MY TAKE IS THAT THE WORD -- WHEN THEY USED THE WORDS "SUBJECT

17   TO REMOVAL," THEY WERE CONTEMPLATING A MUCH MORE STANDARD

18   SITUATION WHERE WE HAVE AN UNDOCUMENTED PERSON WHO COMMITS A

19   CRIME, AND THEN WOULD BE DEPORTED IMMEDIATELY UPON BEING RELEASED

20   FROM CUSTODY.

21       OR PERHAPS SOMEBODY WHO IS IN THE COUNTRY LEGALLY, BUT IS

22   OBVIOUSLY GOING TO BE DEPORTED AFTER BEING CONVICTED.

23       IT IS NOT OBVIOUS THAT MR. AMIRI WOULD BE REMOVED AFTER

24   BEING CONVICTED OR AFTER SERVING HIS SENTENCE.  IT'S A MUCH MORE

25   COMPLICATED AFFAIR.  AND I AM SUSPECT -- I DO NOT KNOW -- AND
```

```
 1   THIS IS NOT SOMETHING I GOT INTO DETAIL WITH JUDGE CORLEY ABOUT,

 2   BUT I SUSPECT THAT THAT IS -- THIS IS NOT THE TYPE OF SITUATION

 3   THAT WAS BEING ENVISIONED WHEN THEY WROTE THE WORDS "SUBJECT TO

 4   REMOVAL."

 5        SO I GUESS WHAT I WILL -- I GUESS I WOULD LIKE YOU TO PASS A

 6   MESSAGE ON TO THE UNITED STATES ATTORNEY, IF YOU WOULD. AND I

 7   SUSPECT THAT I DON'T GIVE YOU GUYS A HARD TIME ABOUT NEARLY AS

 8   MUCH STUFF AS SOME OF THE OTHER JUDGES DO, LIKE JUDGE BREYER, FOR

 9   EXAMPLE.

10        SO I'M GOING TO ASK YOU TO TAKE THAT INTO ACCOUNT.  AND I'M

11   GOING TO ASK YOU TO PASS ALONG TO ALEX TSE, THE UNITED STATES

12   ATTORNEY, THAT WHAT IS THE POINT OF EXERCISING THE AWESOME POWER

13   THAT FEDERAL PROSECUTORS EXERCISE IF NOT TO USE IT TO DO THE

14   RIGHT THING IN A CASE LIKE THIS?

15         AND WHAT IS WRONG WITH BUYING INTO THE IDEA OF MR. AMIRI

16   PARTICIPATING IN THE CAP PROGRAM AND BEING OPEN TO FILING A 3553

17   (E) MOTION IF HE SUCCESSFULLY COMPLETES IT, TAKING ANOTHER LOOK

18   AT HIS COOPERATION?

19        THAT IS THE MESSAGE I WOULD LIKE TO ASK YOU TO PASS ALONG TO

20   THE UNITED STATES ATTORNEY.

21            MS. HARRIS:  WELL, YOUR HONOR, I DO HAVE A FEW THINGS

22   THAT I WOULD LIKE TO BRING BEFORE THE COURT.  FIRST OF ALL, MR.

23   AMIRI AGREED NOT TO PARTICIPATE IN CAP IN HIS PLEA AGREEMENT.

24            THE COURT:  IF HE'S ACCEPTED INTO THE CAP PROGRAM I

25   WILL ORDER HIM TO PARTICIPATE IN THE CAP PROGRAM AGAINST HIS
```

1   WILL.

2         **MS. HARRIS:**  I DON'T REALLY KNOW IF THAT'S SOMETHING

3   THAT THE COURT CAN DO.  I URGE THE COURT NOT TO INVITE THE

4   DEFENDANT TO BREACH HIS PLEA AGREEMENT, AS AN INITIAL MATTER.

5         **THE COURT:**  I'M NOT GOING TO INVITE HIM TO BREACH HIS

6   PLEA AGREEMENT.  I'M GOING TO ORDER HIM TO PARTICIPATE IN THE CAP

7   PROGRAM IF HE'S ACCEPTED IN THE CAP PROGRAM, WHICH I THINK THAT

8   THERE'S A PRETTY GOOD CHANCE THAT HE WILL NOT BE, BUT I THINK

9   THAT -- I THINK THAT THE CAP JUDGES SHOULD CONSIDER THAT.

10         **MS. HARRIS:**  AND ON TO MY NEXT POINT, YOUR HONOR, I

11   UNDERSTAND THAT MR. MABIE HAD A CERTAIN POINT OF VIEW ABOUT THIS

12   CASE.  BUT I, TOO, AS THE PROSECUTOR HAD A CERTAIN POINT OF VIEW

13   ABOUT IT, AND I DO WANT TO GIVE THE COURT SOME INFORMATION ABOUT

14   MY POINT OF VIEW.

15      YOUR HONOR, THIS CASE INVOLVED AT THE TIME OF CHARGING

16   SIGNIFICANT FRAUD INVOLVING MULTIPLE VICTIMS AND SOPHISTICATED

17   METHODS.  THE EVIDENCE HERE SUGGESTS THAT THIS MR. AMIRI RECEIVED

18   VICTIM PROFILES, EITHER THROUGH THEFT OR FROM WORKING WITH OTHER

19   INDIVIDUALS WHO STOLE MAIL AND AGGRESSIVELY MOVED TO TAKE OVER

20   THESE VICTIMS' CREDIT ACCOUNTS AND BANK ACCOUNTS.

21      HE'S LIABLE AT THIS POINT FOR OVER $70,000 IN LOSSES THAT

22   ARE SUFFERED BY THESE VICTIMS.

23         **THE COURT:**  I THOUGHT IT WAS $76,000.

24         **MS. HARRIS:**  NO, YOUR HONOR.  I FILED AN UPDATED --

25   EXCUSE ME -- A RESPONSE TO DEFENSE COUNSEL'S LAST FILING WHERE I

1    AMENDED THAT NUMBER.  IT'S AT $73,213.73.  THAT'S ON FURTHER

2    REVIEW.

3              **THE COURT:**  BECAUSE I WAS CURIOUS IF YOU WERE ASKING --

4    YOU ASKED FOR $76,000 AT ONE POINT.  WAS THAT A BREACH OF THE

5    PLEA AGREEMENT?

6              **MS. HARRIS:**  NO, BECAUSE --

7              **THE COURT:**  WHY NOT?

8              **MS. HARRIS:**  BECAUSE WHAT I SAID, YOUR HONOR, IS AT

9    THAT POINT THOSE WERE MY CALCULATIONS.  THEY WERE SUBJECT TO

10   CHANGE BASED ON THE INFORMATION THAT I GOT BACK FROM THE VICTIMS.

11             **THE COURT:**  NO, I UNDERSTAND THAT.  BUT THE PLEA

12   AGREEMENT SAID THAT RESTITUTION WILL BE SOMEWHERE BETWEEN -- THE

13   GOVERNMENT AGREED THAT RESTITUTION WILL BE SOMEWHERE BETWEEN -- I

14   DON'T REMEMBER THE NUMBERS, BUT I THINK IT WAS 25,000 AND 75,000.

15             **MS. HARRIS:**  INCORRECT.  $31,000 AND $75,000.  THAT IS

16   THE ULTIMATE CLAIM THE GOVERNMENT IS MAKING TODAY IS $73,000,

17   YOUR HONOR.

18             **THE COURT:**  BUT IN MAKING YOUR FILING ASKING FOR

19   RESTITUTION OF $76,000, DID YOU BREACH THE PLEA AGREEMENT?

20             **MS. HARRIS:**  NO, BECAUSE I DIDN'T ASK FOR RESTITUTION

21   OF $76,000, YOUR HONOR.  THAT'S LITERALLY NOT WHAT I SAID.

22             **THE COURT:**  I THOUGHT -- I MEAN, MY RECOLLECTION OF

23   WHAT YOU SAID IS THAT:

24             "AS OF NOW IT'S $76,000, BUT TWO MORE VICTIMS MAY COME

25        IN, AND ASK FOR EVEN MORE."

1          **MS. HARRIS:** NO. I SAID:

2          "AS OF JANUARY 31ST, 2018, THE GOVERNMENT CALCULATES

3          THAT THE VICTIMS ARE COLLECTIVELY OWED APPROXIMATELY

4          $76,396.97, WITH RESPONSES FROM TWO POTENTIAL VICTIMS

5          STILL OUTSTANDING. THAT NUMBER MAY CHANGE IF THE TWO

6          REMAINING POTENTIAL VICTIMS MAKE RESTITUTION CLAIMS, OR IF

7          THE DEFENSE DISPUTES SOME OF THE CLAIMS, PROVIDES EVIDENCE

8          THAT ANY PARTICULAR TRANSACTION WAS LEGITIMATE, OR PROVIDES

9          EVIDENCE THAT THE DEFENDANT HAS ALREADY COMPENSATED A VICTIM

10         FOR THE ALLEGED FRAUDULENT TRANSACTION OR PURCHASE."

11         I DID, IN THE MEANTIME, AFTER REVIEWING THEIR FILING MEET

12   AND CONFER WITH DEFENSE COUNSEL. AND, IN FACT THAT NUMBER HAS

13   GONE DOWN AFTER THAT MEET AND CONFER BECAUSE SOME OF THE

14   INSTANCES THEY POINTED TO I ACCEPTED IN TERMS OF THE VICTIMS

15   EITHER NOT BEING OWED RESTITUTION, OR IN ONE CASE THERE WAS A

16   DUPLICATIVE ENTRY ON THE CHART.

17         ADDITIONALLY, SOME OF THE VICTIMS DIDN'T GET BACK TO ME SO

18   THEIR CLAIMS WERE EXCLUDED. BUT AS OF THIS TIME RIGHT NOW I

19   FILED JUST RECENTLY A FILING ON THE 15TH OF MARCH ASKING FOR

20   RESTITUTION IN THE AMOUNT OF $73,000, A LITTLE BIT OVER THAT.

21         SO, NO, THAT IS NOT A BREACH OF THE PLEA. BUT BACK TO MY

22   FURTHER POINT, YOUR HONOR, THIS CASE INVOLVED AN AGGRESSIVE

23   EFFORT BY MR. AMIRI AND OTHERS TO USE PEOPLE'S IDENTITIES IN A

24   WAY THAT IS EXTRAORDINARY, FRANKLY.

25         USUALLY, THE TYPES OF CASES THAT I'M USED TO SEEING THAT

1    INVOLVE THESE PARTICULAR TYPES OF CHARGES ARE, YOU KNOW, MAYBE

2    SOMEBODY STEALS MAIL AND GETS A CONVENIENCE CHECK AND WRITES IT

3    TO THEMSELVES SO THAT THEY CAN BUY GROCERIES.

4         THAT'S NOT WHAT HAPPENED HERE.  I DO ACTUALLY HAVE TWO

5    INDIVIDUALS -- OR ONE INDIVIDUAL HERE TODAY, MR. CAMPION AND

6    MS. FRENCH FROM OUR VICTIM WITNESS PROGRAM WAS ABLE TO MAKE

7    CONTACT WITH MR. METCALF, WHO ARE READY TO DESCRIBE TO THE COURT

8    WHY THIS WAS SUCH A DEVASTATING OFFENSE AND HOW IT AFFECTED THEM

9    AND THEIR CREDIT.

10              **THE COURT:**  SO JUST TO BE CLEAR, WE HAVE PEOPLE WHO ARE

11   IN THE COURTROM -- IN THE COURT NOW --

12              **MS. HARRIS:**  YES, YOUR HONOR.

13              **THE COURT:**  -- WHO WISH TO BE HEARD?

14              **MS. HARRIS:**  YES, YOUR HONOR.

15              **THE COURT:**  VICTIMS?  OKAY.

16              **MS. HARRIS:**  AND, AGAIN, IN AN AGE WHERE PRACTICALLY

17   EVERYBODY RELIES EXCLUSIVELY ON CREDIT AND DEBIT CARDS TO FINANCE

18   THEIR EVERYDAY ACTIONS, THEIR DAILY LIVES FROM FOOD TO TRAVEL, I

19   MEAN THAT IMPORTANCE AND THE IMPACT OF HIS CONDUCT SIMPLY CANNOT

20   BE OVERSTATED.

21        AND I WOULD ALSO NOTE THAT THIS IS NOT EVEN HIS FIRST FRAUD

22   CONVICTION.

23              **THE COURT:**  I KNOW.  BUT YOU GO THROUGH HIS CRIMINAL

24   HISTORY, AND IT'S CLEAR THAT THESE ARE THE ACTIONS OF -- THIS

25   PERSON'S ACTIONS WERE DRIVEN BY HIS DRUG ADDICTION.  AND HE HAS

```
 1    NOW COMPLETELY TURNED HIS LIFE AROUND.  HE'S WORKING.  HE APPEARS

 2    TO BE COMMITTED TO PAYING THE RESTITUTION. HE HAS A BABY ON THE

 3    WAY. HE IS COMMITTED TO SUPPORTING HIS FAMILY.

 4         AND HE -- AS THE PROBATION OFFICER SAID:

 5              "YOU KNOW, IN 20 YEARS I'VE NEVER SEEN ANYBODY WHO HAS

 6         BEEN SO COMMITTED TO TURNING HIS LIFE AROUND, SO REMORSEFUL

 7         ABOUT WHAT HE DID TO HIS VICTIMS, AND SO COMMITTED TO MAKING

 8         IT RIGHT."

 9         AND SO I UNDERSTAND EVERYTHING YOU'RE SAYING, AND I

10    APPRECIATE THE VEHEMENCE WITH WHICH YOU ARE SAYING IT, BUT IT

11    KIND OF -- IT KIND OF -- IT KIND OF SLIDES PAST THE SORT OF THE

12    WHOLE POINT OF THIS, I THINK, WHICH IS THAT, YES, HE DID COMMIT

13    SERIOUS CRIMES.  BUT HE HAS DEMONSTRATED AN INCREDIBLE COMMITMENT

14    TO MAKING IT RIGHT, TO PROVIDING RESTITUTION TO HIS VICTIMS.

15         AND, BY THE WAY, SENDING HIM -- YOU KNOW, THE MOMENT WE SEND

16    HIM TO PRISON, THE VICTIMS ARE GOING TO BE EITHER -- AT AN

17    ABSOLUTE MINIMUM THEIR RESTITUTION, THE VICTIMS' RESTITUTION IS

18    GOING TO BE SIGNIFICANTLY DELAYED.  RIGHT?

19         THEY ARE NOT GOING TO GET ANY RESTITUTION WHILE HE SPENDS

20    TWO YEARS, OR WHATEVER IT IS YOU'RE ASKING FOR, IN PRISON.

21         AND, FURTHERMORE, WHEN PEOPLE SPEND TIME IN PRISON IT

22    BECOMES VERY HARD TO GET A JOB WHEN YOU GET OUT OF PRISON.

23         AND SO BY INSISTING THAT HE GO TO PRISON, YOU ARE FURTHER

24    DIMINISHING THE OPPORTUNITY OF THE VICTIMS TO GET RESTITUTION.

25         RIGHT NOW HE'S WORKING IN A HIGH-END RESTAURANT IN SAN
```

1  FRANCISCO AS A MANAGER.  HE'S MAKING MONEY, HAS BEEN PUTTING AWAY

2  MONEY FOR THE PURPOSE OF PAYING RESTITUTION AND SENDING HIM TO

3  PRISON, DESPITE THE DEMONSTRATED COMMITMENT THAT HE'S MADE, IS

4  GOING TO INTERRUPT ALL THAT AND IS GOING TO ACTUALLY INTERFERE

5  WITH THE ABILITY OF THE VICTIMS TO GET THEIR RESTITUTION BACK.

6          **MS. HARRIS:**  YES, YOUR HONOR.  AND SO WILL DELAYING THE

7  CASE FOR A YEAR OR 18 MONTHS FOR HIM TO PARTICIPATE IN THE CAP

8  PROGRAM.

9      THE VICTIMS DESIRE CLOSURE IN THIS CASE.  THEY DESIRE TO

10 MOVE ON WITH THEIR LIVES AND HAVE THE COURT ORDER THE

11 RESTITUTION.

12         **THE COURT:**  BUT HE CAN CONTINUE TO EARN MONEY AND SAVE

13 MONEY WHILE HE IS IN THE CAP PROGRAM AND, THEREFORE, THE VICTIMS

14 WILL GET PAID A LOT SOONER IF HE PARTICIPATES IN THE CAP PROGRAM

15 THAN IF HE GETS SENT TO PRISON FOR TWO YEARS.

16         **MS. HARRIS:**  WELL, WITH RESPECT TO --

17         **THE COURT:**  A, THEY WILL GET PAID A LOT SOONER.  AND,

18 B, THERE'S A MUCH HIGHER CHANCE THAT THEY WILL GET PAID AT ALL.

19 THERE'S A MUCH LOWER CHANCE THAT THEY WILL GET PAID AT ALL, AT

20 ALL IF HE GOES TO PRISON.

21         **MS. HARRIS:**  YOUR HONOR, I DISAGREE WITH THAT AND I

22 DISAGREE BECAUSE HE COMES TO US AS A CRIMINAL --

23         **THE COURT:**  HOW FAMILIAR ARE YOU WITH THE ABILITY OF

24 PEOPLE WHO SERVE PRISON TIME TO COME BACK OUT AND MAKE GOOD MONEY

25 IN A JOB?

1          **MS. HARRIS:**  WELL, HE WAS GOING TO DO IT, YOUR HONOR.

2    I MEAN, HE COMES TO US AS A CRIMINAL HISTORY CATEGORY 6, HE HAS

3    AT LEAST ONE, TWO, THREE--

4          **THE COURT:**  OKAY. SO --

5          **MS. HARRIS:**  -- FOUR FELONY CONVICTIONS, AND HE'S ABLE

6    TO GET THE JOB HE HAS RIGHT NOW.

7          **THE COURT:**  -- YOU PURPORT TO BE REPRESENTING THE

8    VICTIMS IN THIS CASE.

9      ARE YOU HONESTLY TELLING ME THAT THE VICTIMS ARE BETTER OFF,

10   THE PEOPLE WHO WANT RESTITUTION ARE BETTER OFF IF THIS PERSON

11   GOES TO PRISON THAN IF HE IS ALLOWED TO PARTICIPATE IN THE CAP

12   PROGRAM, KEEP EARNING HIS MONEY AND PAY THE RESTITUTION MUCH

13   FASTER?

14         **MS. HARRIS:**  WELL --

15         **THE COURT:**  YOU HONESTLY THINK THE VICTIMS FROM THE

16   STANDPOINT OF RESTITUTION ARE BETTER OFF IF THIS PERSON GOES TO

17   PRISON?

18         **MS. HARRIS:**  YOUR HONOR, THE GOVERNMENT'S

19   RECOMMENDATION TAKES INTO ACCOUNT WHAT THE VICTIMS HAVE ALSO

20   ASKED FOR.  AND THEY BELIEVE THAT A PRISON SENTENCE IS

21   APPROPRIATE IN THIS CASE.

22         **THE COURT:**  WELL, I DON'T KNOW IF THEY UNDERSTAND.  I

23   MEAN, GIVEN THE CONVERSATIONS THAT YOU'VE BEEN HAVING WITH THEM

24   I'M NOT SURE THEY UNDERSTAND THAT THIS DEFENDANT, BY SENDING HIM

25   TO PRISON, WE ARE DRAMATICALLY REDUCING THE CHANCES THAT THEY

1   WILL MEANINGFULLY RECOVER RESTITUTION IN THIS CASE.

2       I DOUBT THEY UNDERSTAND THAT BASED ON EVERYTHING THAT YOU'RE

3   SAYING HERE TODAY.

4           **MS. HARRIS:**  I DISAGREE, YOUR HONOR.  RESPECTFULLY, I

5   JUST DISAGREE. I MEAN, WE HAVE ALREADY SEEN MR. AMIRI'S ABILITY

6   TO GET A HIGH-PAYING JOB, NOTWITHSTANDING HIS PAST CONVICTION

7   HISTORY WITH FOUR FELONIES.

8       I MEAN, AGAIN, YOUR HONOR, WHAT WE'RE ASKING FOR IS NOT

9   OUTSIDE OF THE REALM OF POSSIBILITY.  I JUST HAD A CASE IN SAN

10  JOSE WHERE THE DEFENDANT, MARK FETTERS, WAS SENTENCED DESPITE

11  BEING A CRIMINAL HISTORY CATEGORY ONE TO 33 MONTHS IN JAIL.  AND

12  HE WAS ORDERED BY JUDGE KOH TO PAY RESTITUTION IN $5.7 MILLION.

13      NOW, I MEAN, I GUESS --

14          **THE COURT:**  WHAT DOES THAT HAVE TO DO WITH ANYTHING?

15          **MS. HARRIS:**  MY POINT IS THAT HE WAS CONVICTED OF MAIL

16  FRAUD, YOUR HONOR.  AND NOTWITHSTANDING HIS PAST CRIMINAL HISTORY

17  THE JUDGE STILL IMPOSED A SIGNIFICANT RESTITUTIONARY SENT AND

18  ALSO --

19          **THE COURT:**  I MEAN, UNLESS YOU WANT TO GIVE ME THE PSR

20  IN THAT CASE AND LAY OUT ALL THE FACTS OF THAT CASE AND THE

21  CIRCUMSTANCES OF THE OFFENSE, I DON'T SEE HOW THAT IS RELEVANT.

22          **MS. HARRIS:**  YOUR HONOR MMY POINT IS THIS.  IN THESE

23  TYPES OF CASES, IN MY EXPERIENCE WITH THESE TYPES OF CASES THIS

24  SENTENCE IS NOT OUT OF THE ORDINARY AT ALL. THE GOVERNMENT'S

25  RECOMMENDATION HERE TAKES INTO ACCOUNT THE ISSUES THAT THE COURT

1    RAISED --

2              **THE COURT:**  I AGREE WITH YOU.

3              **MS. HARRIS:**  -- SPECIFICALLY THE ISSUES --

4              **THE COURT:**  I AGREE WITH YOU.

5              **MS. HARRIS:**  -- ABOUT HIS ACCEPTANCE OF RESPONSIBILITY,

6    HIS --

7              **THE COURT:**  YES, I AGREE -- JUST IF I COULD JUST SAY

8    FOR A SECOND.  I MEAN, I AGREE THAT THE SENTENCE YOU'RE PROPOSING

9    IS NOT OUT OF THE ORDINARY.

10      WHAT IS OUT OF THE ORDINARY IS THE DEFENDANT. AND WHAT IS

11   OUT OF THE ORDINARY, IN MY OPINION, IS THAT THE GOVERNMENT IS

12   PROPOSING THIS SENTENCE FOR THIS DEFENDANT UNDER THESE PARTICULAR

13   CIRCUMSTANCES.

14      THAT IS WHAT FEELS OUT OF THE ORDINARY TO ME.

15              **MS. HARRIS:**  OKAY. UNDERSTOOD, YOUR HONOR.

16      AGAIN, I NOTE THAT THIS PARTICULAR FRAUD CASE COMPARED WITH

17   OTHER CASES THAT I'VE HANDLED DOES -- IS MORE SIGNIFICANT IN

18   TERMS OF THE OFFENSES THAT WERE COMMITTED.  AND THAT'S THE MAJOR

19   REASON WHY THE GOVERNMENT IS SEEKING THE SENTENCE THAT IT IS.

20      NOT ONLY BECAUSE OF THE NEED TO RESOLVE THE CASE AND MOVE ON

21   TO GET RESTITUTION FOR THE VICTIMS, BUT ALSO PROVIDE ADEQUATE

22   DETERRENCE FOR THESE PARTICULAR OFFENSES.

23      I MEAN, EVERY SINGLE CONVICTION THAT HE'S HAD IN THE PAST

24   SEEMS TO GRAVITATE TOWARDS THEFT AND FRAUD.  EVERY SINGLE ONE,

25   YOUR HONOR.

1    AND NOT JUST THAT --

2          **THE COURT:**  THAT'S THE RAP SHEET OF A --

3          **MS. HARRIS:**  -- HE WAS ARRESTED IN FEBRUARY OF 2014,

4    AND, AGAIN, IN FEBRUARY OF 2015 DOING THE SAME THINGS.

5       THIS DEFENDANT HAS PROVEN EXTREMELY HARD TO DETER.  AND

6    THAT, AGAIN, WAS THE POINT AND PURPOSE OF THESE CHARGES AT THE

7    TIME THE CASE WAS CHARGED.

8       SO THE COURT SAYS THAT, YOU KNOW:

9          "WHAT'S THE POINT OF THE GOVERNMENT WITH THE AWESOME

10         POWER CHARGING IN THIS MANNER?"

11      AND THAT'S THE REASON BECAUSE AT THE TIME I CHARGED THIS

12   CASE, YOUR HONOR, I WAS LOOKING AT --

13         **THE COURT:**  I'M NOT TALKING ABOUT HOW YOU CHARGED THE

14   CASE.

15         **MS. HARRIS:**  WELL --

16         **THE COURT:**  AND I'M NOT EVEN -- AND NONE OF THIS IS

17   PERSONAL TO YOU. IT IS DIRECTED AT YOUR OFFICE.  AND I DON'T HAVE

18   ANY OBJECTION WITH HOW YOU CHARGED THE CASE.  MY -- MY OBJECTION

19   IS TO THE WAY THE GOVERNMENT IS USING ITS AWESOME POWER AT THIS

20   STAGE IN THE CASE.

21         **MS. HARRIS:**  THANK YOU.  I UNDERSTAND, AND I'LL PASS ON

22   YOUR MESSAGE TO MR. TSE AND ALSO TO MY SUPERVISOR.

23      BUT I WILL JUST SAY THAT I CONTINUE TO MAINTAIN MY BELIEF

24   THAT THIS SENTENCE, THAT THE GOVERNMENT'S RECOMMENDATION IS

25   REASONABLE AND APPROPRIATE IN THIS CASE, ESPECIALLY BASED ON THE

1    FACTORS.

2         I UNDERSTAND YOUR HONOR DISAGREES.  I UNDERSTAND THAT THE

3    DEFENSE DISAGREES.  BUT THAT'S OUR ABILITY AND OUR RIGHT AS A

4    PARTY TO SEEK JUSTICE IN THIS WAY.

5         YOU KNOW, UNFORTUNATELY, THE COURT'S DETERMINATION TO REFER

6    THIS CASE FOR CAP PUTS US IN A VERY AWKWARD POSITION BECAUSE THE

7    DEFENDANT HAS AGREED NOT TO PARTICIPATE IN CAP PROGRAM.

8         ALSO, I DON'T THINK IT'S APPROPRIATE FOR THIS CASE FOR THE

9    REASONS THAT I STATED BECAUSE IT'S A SERIOUS FRAUD MATTER,

10   BECAUSE OF HIS CONTINUING AND PERSISTENT EFFORTS TO VICTIMIZE

11   THESE INDIVIDUALS.  AND ALSO BECAUSE HE'S HAD SEVERAL CHANCES

12   BEFORE IN HIS HISTORY WITH PROBATION AND HIS PREVIOUS CONVICTIONS

13   TO GET THIS RIGHT.

14        I ALSO THINK THAT CAP IS UNNECESSARY GIVEN HIS SIGNIFICANT

15   RECOVERY AS YOUR HONOR --

16        **THE COURT:**  THAT'S WRONG. I MEAN, SOMEBODY WHO HAS

17   SUFFERED FROM A SERIOUS DRUG ADDICTION LIKE MR. AMIRI NEEDS ALL

18   THE HELP HE CAN GET.  AND SO THAT IS -- IN THAT REGARD, YOU ARE

19   WRONG.

20        I MEAN, THIS IS A PERFECT PERSON FOR THE CAP PROGRAM IN THAT

21   REGARD.

22        SO I GUESS I HAVE ONE QUESTION FOR YOU, WHICH IS IF THERE'S

23   ANYTHING ELSE YOU WANT TO SAY FOR THE RECORD, YOU CAN.  BUT I

24   HAVE ONE QUESTION FOR YOU, WHICH IS YOU'VE MADE SOME NOISE ABOUT

25   THE PLEA AGREEMENT.

1        IS IT YOUR INTENTION TO FILE A MOTION TO WITHDRAW THE PLEA

2   AGREEMENT IF WE COME BACK HERE, IF WE'RE BACK HERE AFTER THE CAP

3   REFERRAL?

4           **MS. NALL:**  YOUR HONOR, AT THIS POINT IT IS NOT OUR

5   INTENTION TO DO THAT.  I THINK WE CAN SEE THE VEHEMENCE ON THE

6   SIDE OF THE GOVERNMENT.  I THINK LET'S NOT END THE CARDS AT THIS

7   POINT.  AND I WOULD JUST LIKE TO BE BRIEFLY HEARD ON A COUPLE

8   OTHER ISSUES.

9           **THE COURT:**  COULD I ASK ONE OTHER QUESTION?

10          **MS. NALL:**  SURE.

11          **THE COURT:**  ARE YOU ALWAYS THIS VEHEMENT OR DO YOU --

12  BECAUSE, YOU KNOW, SHE USED THE WORD VEHEMENCE, AND I'M CURIOUS.

13  LIKE I USUALLY DON'T SEE PEOPLE FROM THE U.S. ATTORNEY'S OFFICE

14  COME IN WITH SUCH --

15          **MS. NALL:**  PASSION.

16          **THE COURT:**  -- PASSION AND BREATHING SUCH FIRE.

17          **MS. HARRIS:**  YOUR HONOR, I LOVE WHAT I DO. I CAME HERE

18  FROM PRIVATE PRACTICE FROM MORRISON & FOERSTER, IF YOUR HONOR'S

19  FAMILIAR.

20       I LOVE THIS JOB, AND I REALLY AM PASSIONATE ABOUT GETTING

21  RECOVERY FOR VICTIMS.  ESPECIALLY MY OTHER LIFE, I GUESS YOU

22  COULD SAY, IN SAN JOSE MY CASES MOSTLY FOCUS ON SEX TRAFFICKING

23  INVOLVING CHILDREN.

24       SO, YES, I HAVE A LOT OF VICTIM-CENTERED CASES AND GETTING

25  JUSTICE FOR THOSE VICTIMS IS VERY, VERY IMPORTANT TO ME.

1          **THE COURT:**  OKAY. SPEAKING OF VICTIMS, BEFORE WE --

2    BEFORE I GET TO YOU, WOULD THE VICTIMS -- I UNDERSTAND THERE ARE

3    A COUPLE OF VICTIMS IN THE COURTROOM.  DO THEY WISH TO BE HEARD

4    AT THIS TIME?

5          **MS. HARRIS:**  WE HAVE JON CAMPION, YOUR HONOR, AND ALSO

6    MAUREEN FRENCH FROM OUR VICTIM WITNESS UNIT WHO HAS A COUPLE OF

7    THINGS TO SAY FOR MR. METCALF WHO, UNFORTUNATELY, WAS STUCK IN

8    TRAFFIC AND COULD NOT MAKE IT TODAY.

9          **MS. NALL:**  THE INFORMATION I HAD TO PROVIDE IS ACTUALLY

10   PERTINENT TO THE VICTIMS.

11         **THE COURT:**  WHY DON'T WE HEAR FROM THEM FIRST?

12         **MS. NALL:**  OKAY. THANK YOU.

13         **MS. FRENCH:**  I'M MAUREEN FRENCH, VICTIM WITNESS

14   SUPERVISOR FOR THE U.S. ATTORNEY'S OFFICE.  I SPOKE WITH RON

15   METCALF BEFORE THE HEARING, AND HE JUST HAD A COUPLE OF WORDS TO

16   SAY.

17     HE SAID THAT THIS CRIME HAS AFFECTED HIS FAMILY AND HIS

18   BUSINESS.  AS A RESULT OF THE FRAUD HIS CREDIT WAS NEGATIVELY

19   AFFECTED.

20         **THE COURT:**  CAN YOU HOLD ON A SECOND?  I MEAN, WHY --

21   HE CAN WRITE ME A LETTER OR HE CAM COME HERE.  LIKE WHY DO I NEED

22   TO HEAR FROM YOU?

23         **MS. FRENCH:**  HE DID WRITE A LETTER.

24         **THE COURT:**  OKAY.  THEN, WHY DO NEED TO HEAR IT FROM

25   YOU?

1        **MS. HARRIS:**  HE SAID:

2             "IF I CAN'T GET THERE, CAN YOU TALK TO THE JUDGE?  CAN

3        YOU GIVE THESE WORDS TO HIM" SO --

4             **THE COURT:**  I MEAN, IF HE WANTS TO COME, HE CAN COME.

5    AND IF HE WANTS TO WRITE A LETTER, HE CAN WRITE A LETTER.  BUT I

6    DON'T REALLY KNOW WHY I SHOULD BE HEARING FROM YOU.

7             **MS. FRENCH:**  WELL, WE'VE DONE THIS IN THE PAST SO --

8             **MS. HARRIS:**  WE HAVE, YOUR HONOR.

9             **THE COURT:**  MAKE IT QUICK.

10             **MS. FRENCH:**  IT IS CORRECT HE WAS NEGATIVELY AFFECTED

11   AND HE WAS UNABLE TO GET FINANCES FOR HIS BUSINESS.

12   ADDITIONALLY, WHEN HE WENT TO GO AND CORRECT HIS CREDIT REPORT HE

13   WAS UNABLE TO DO SO BECAUSE HE WAS UNABLE TO PROVE WHO HE WAS

14   WHEN HE WAS TRYING TO CORRECT HIS CREDIT REPORT BECAUSE THE

15   DEFENDANT ALREADY HAD GONE AND MADE CHANGES TO HIS CREDIT REPORT.

16        AND THAT'S IT.

17             **THE COURT:**  THANK YOU.

18        NEXT.

19             **MR. CAMPION:**  GOOD AFTERNOON, YOUR HONOR.

20             **THE COURT:**  AFTERNOON.

21             **MR. CAMPION:**  YOU ALREADY HAVE MY WRITTEN STATEMENT.

22             **THE COURT:**  I'M SORRY.  COULD YOU REMIND ME OF YOUR

23   NAME?

24             **MR. CAMPION:**  JONATHAN CHAMPION.

25             **THE COURT:**  MR. CAMPION.  AND WHAT DO YOU DO FOR A

1    LIVING?

2              **MR. CAMPION:**  I WORK FOR THE U.S. GOVERNMENT.

3              **THE COURT:**  AND WHAT AGENCY DO YOU WORK FOR?

4              **MR. CAMPION:**  HOMELAND SECURITY INVESTIGATIONS.

5              **THE COURT:**  OKAY. GO AHEAD.

6              **MR. CAMPION:**  I'M JUST HERE TO PUT A FACE ON THE

7    VICTIMS OF THESE CRIMES THE DEFENDANT HAS DONE. I'M NOT OUT ANY

8    MONEY ON THIS CASE. THE PEOPLE WHO HAVE SUFFERED LOSS IN THE

9    INSTANCES AGAINST ME ARE BIG BANKS AND BIG CORPORATIONS.

10   FRANKLY, I COULD CARE LESS IF THEY GET PAID AGAIN.

11       I SPENT COUNTLESS HOURS TRYING TO PUT MY CREDIT, PUT MY LIFE

12   BACK TOGETHER FROM WHAT HE DID TO ME. I'M HERE JUST TO ADVOCATE

13   THAT THIS DOESN'T HAPPEN TO ANYONE ELSE.

14       I MEAN, HE IS VERY GOOD AT WHAT HE DOES AS FAR AS COMMITTING

15   FRAUD. I MEAN, I KNEW HE WAS IMPACTING ME BECAUSE I WOULD TRY TO

16   TAKE BACK MY CREDIT ACCOUNT AND HE WOULD RIGHT AFTER THAT COME

17   TAKE IT AGAIN FROM ME.

18       AND IT JUST -- YOU KNOW, FOR THE REST OF MY LIFE I'M GOING

19   TO HAVE TO WORRY, YOU KNOW, IF THINGS DON'T GO AS YOUR HONOR

20   THINKS THEY WILL FOR HIM, IS HE GOING TO FALL BACK?

21       AND, YOU KNOW, HE KNOWS MY NAME.  HE KNOWS HOW TO TAKE MY

22   ID.  IS HE GOING TO DO IT AGAIN?

23       AND, BASICALLY, I JUST URGE YOUR HONOR TO GIVE SOME SORT OF

24   DETERRENCE TO HIM TO NOT DO THIS AGAIN.

25              **THE COURT:**  THANK YOU. WHAT DO YOU DO FOR THE DHS?

1          **MR. CAMPION:**  I'M A SPECIAL AGENT WITH HSI.

2          **THE COURT:**  AND WHAT -- DO YOU HAVE A PARTICULAR

3    ASSIGNMENT OR -- I WAS JUST CURIOUS.

4          **MR. CAMPION:**  WE DO PORT SECURITY, SO SEAPORTS MOSTLY

5    IS MY GROUP, SO --

6          **THE COURT:**  OKAY. AND DO YOU WORK WITH THE U.S.

7    ATTORNEY'S OFFICE PRETTY REGULARLY?

8          **MR. CAMPION:**  FAIRLY.

9          **THE COURT:**  OKAY.  OKAY.  THANK YOU VERY MUCH.

10          **MR. CAMPION:**  YES.

11          **THE COURT:**  ALL RIGHT.  YOU SAID YOU WANTED TO SAY

12    SOMETHING ABOUT VICTIMS.

13       SO THE FIRST THING IS YOU SAID THAT YOUR CLIENT DOESN'T

14    INTEND TO FILE A MOTION TO WITHDRAW THE GUILTY PLEA?

15          **MS. NALL:**  NO, YOUR HONOR.

16          **THE COURT:**  OKAY.

17          **MS. NALL:**  AND THEN, THE OTHER THINGS I JUST WANTED TO

18    BRING TO THE COURT'S ATTENTION -- AND WE SAID THIS IN OUR

19    BRIEFING -- BUT I WANTED TO EMPHASIZE -- EXCUSE ME FOR MY LACK OF

20    VOICE.

21       I'M HAVING PRETTY BAD BRONCHITIS TODAY  -- THAT MR. AMIRI

22    HAS BEEN MAKING REGULAR DEPOSITS INTO OUR TRUST ACCOUNT.  WE HAVE

23    SEVERAL THOUSAND DOLLARS.  IT'S BEEN SEMIMONTHLY HE'S BEEN DOING

24    IT LIKE CLOCK WORK BASICALLY.

25       THAT IS, HE'LL COME BY MY LAW FIRM WITH A MONEY ORDER.  AND

1   WE ARE KEEPING THAT IN SAFEKEEPING EVEN THOUGH WE HAVEN'T BEEN

2   ABLE TO ACHIEVE, YOU KNOW, PRESENTENCE RESTITUTION ORDER,

3   ANYTHING LIKE THAT.  I DON'T THINK THERE'S ANYTHING LIKE THAT

4   THAT EXISTS.  BUT WE ARE SAVING THAT AND MR. AMIRI WILL CONTINUE

5   TO DO THAT FOR AS LONG AS HE REMAINS EMPLOYED AT HIS CURRENT --

6   AT THIS CURRENT JOB.

7          AND, YOU KNOW, HE'S NEVER AT ALL TRIED TO MINIMIZE THE

8   SERIOUSNESS OF WHAT HAS HAPPENED TO THESE VICTIMS. IT'S REAL BAD,

9   OBVIOUSLY.  IF IT HAPPENED TO ME I WOULD BE EQUALLY AS UPSET

10  ABOUT IT.  AND I KNOW MR. AMIRI IS VERY SORRY.

11         SO NOT AT SENTENCING, BUT IF IT WOULD BE HELPFUL FOR YOUR

12  HONOR TO HEAR FROM HIM DIRECTLY I'M SURE HE WOULD BE HAPPY TO

13  TELL YOU THAT HIMSELF.  IT'S UP TO YOU.

14             **THE COURT:**  WELL, AND I THINK IT WOULD BE FINE UNLESS

15  YOU THINK THAT IT'S IMPORTANT NOW TO MAKE SOME SORT OF RECORD FOR

16  THE CAP JUDGES OR SOMETHING.  I DON'T REALLY KNOW HOW THAT WORKS.

17  BUT, YOU KNOW, FROM MY STANDPOINT, I MEAN, YOU CAN SORT OF SEE

18  WHERE THIS IS GOING.

19         FROM MY STANDPOINT IT DOESN'T MATTER WHETHER I HEAR FROM

20  MR. AMIRI NOW OR NEXT TIME.

21             **MS. NALL:**  WELL, IT MAY BE MORE TO THE VICTIMS,

22  MR. CAMPION, YOU KNOW, BEING ONE HAVING TROUBLE, ALTHOUGH WE WERE

23  HERE TWICE.

24         HE WAS HERE LAST TIME TO HEAR DIRECTLY FROM MR. AMIRI ABOUT

25  HOW HE IS TAKING RESPONSIBILITY FOR IT, AND I KNOW IT'S BEEN A

1    LONG AFTERNOON.

2               **THE COURT:**  NO, THAT'S FINE.

3               **MS. NALL:**  REAL QUICK.

4               **THE COURT:**  THAT'S FINE.  TAKE AS MUCH TIME AS YOU

5    NEED.

6               **THE DEFENDANT:**  GOOD AFTERNOON, YOUR HONOR. JUST WANT

7    TO THANK YOU FOR GIVING ME THE OPPORTUNITY TO SPEAK. AND I WORK

8    EVERY DAY.  I WORK SIX DAYS A WEEK, 14 HOURS A DAY.  AND I KNOW

9    HOW TO -- HOW HARD IT IS TO EARN MONEY.  AND I AM TRYING TO BUILD

10   MY OWN CREDIT RIGHT NOW BECAUSE I WAS LEFT OUT SO MANY YEARS AND

11   I WAS DOING HEROIN FOR SO MANY YEARS, AND I KNOW HOW HARD IT IS.

12       AND, AS I SAY IN MY LETTER TO YOU THAT I WORK AS MANY

13   OVERTIME, AS MANY JOB SO I CAN BE ABLE TO PAY MY VICTIMS. I CAN'T

14   GO TO SLEEP AT NIGHT.

15       I'M HAVING A CHILD, AND I PRAY TO GOD THAT I COULD GO BACK

16   AND CHANGE WHAT I'VE DONE. IF I WOULDN'T GO TO NEWBRIDGE I

17   WOULDN'T BE STANDING HERE.  I WOULD HAVE PROBABLY CATCH ANOTHER

18   CASE OR BE USING DRUGS OUTSIDE ON THE STREET.

19       SO I'M JUST TIRED OF THAT LIFE. IT'S BEEN TWO-AND-A-HALF

20   YEARS THAT I HAVE NOT TOUCHED A NEEDLE. AND I COULD NOT STAY

21   SOBER FOR TWO WEEKS. I WAS FIGHTING THAT WAY FOR 15 YEARS.  I

22   COULD NOT GET OUT.  AND FOR THE FIRST TIME I BOUGHT MY OWN CAR.

23   I'M HAVING A BABY.  AND I'M PAYING -- WE JUST MOVE INTO A NEW

24   HOUSE.  AND IT'S IN MY NAME.  IT'S SOMETHING I NEVER HAD.

25       IT'S THE PEOPLE THAT I WORK WITH, MY BOSS, HE KNOWS

1    EVERYTHING ABOUT ME.  AND HERE I AM STILL HAVING ACCESS TO THE

2    SAFE, AND ONE OF HIS MOST TRUSTED PERSONS EVER.

3        THAT PERSON, THE PERSON THAT COMMIT THIS CRIME I'M NOW

4    TAKING FULL RESPONSIBILITY.  I'M TAKING FULL RESPONSIBILITY, BUT

5    HEROIN WAS ONE OF THE MAIN REASON THAT I DID WHAT I'VE DONE. AND

6    BUT I STILL TAKE FULL RESPONSIBILITY FOR WHAT I'VE DONE.  AND I

7    WANT TO THANK YOU FOR THE TIME I'M AT CENTER POINT. I DID AND I

8    DO APOLOGIZE.  WHEN I WAS GOING TO HERE I MET MR. CAMPION IN THE

9    ELEVATOR.  IT WAS A VERY AWKWARD MOMENT.  I WAS GOING TO ASK HIM

10   AND TELL HIM HOW SORRY I AM.  I DIDN'T KNOW HOW HE WAS GOING TO

11   REACT.

12       BUT I'M GOING TO TAKE THIS OPPORTUNITY.  I'M GOING TO

13   APOLOGIZE.  I DO APOLOGIZE.  AND YOU DON'T HAVE TO WORRY ABOUT ME

14   USING YOUR NAME OR USING IDENTITY BECAUSE I KNOW HOW HARD IT IS.

15       SINCERELY, FROM BOTTOM OF MY HEART, I DO APOLOGIZE TO YOU.

16       **MS. NALL:**  I THINK WITH THAT I THINK WE'VE DONE

17   EVERYTHING.  WE'VE PROVIDED ALL INFORMATION THAT WOULD BE

18   RELEVANT.

19       **THE PROBATION OFFICER:**  YOUR HONOR, IF I COULD JUST

20   ADD --

21       **THE COURT:**  PLEASE.

22       **PROBATION OFFICER:**  SINCE THE LAST HEARING IN NOVEMBER

23   I REACHED OUT TO THE PRETRIAL OFFICER, AND HE AFFIRMED THAT THE

24   CLIENT CONTINUES TO DO WELL IN PRETRIAL SUPERVISION, REPORT AS

25   REQUIRED, ATTEND EVERYTHING THAT HE'S ASKED TO DO WITHOUT ANY

1    PROBLEMS.

2          **THE COURT:  Okay.**  ALL RIGHT. SO I'M GOING TO REFER

3    THIS FOR A CAP ASSESSMENT. MY GUESS IS THAT IT MAY BE A BIT OF AN

4    UPHILL BATTLE, BUT YOU NEVER KNOW.

5          I IMPLORE YOU TO PLEASE PASS MY MESSAGE ALONG TO THE U.S.

6    ATTORNEY AND ASK HIM TO CONSIDER IT AND ASK HIM TO CONSIDER THE

7    FACT THAT I DON'T GIVE YOU GUYS A HARD TIME ABOUT TOO MUCH.

8          AND SO I'LL MAKE THAT REFERRAL. I ASSUME -- JUDGE CORLEY

9    TOLD ME LAST NIGHT THEY HAVE A MEETING ON THURSDAY, BUT THAT SHE

10   ASSUMED THAT IT WOULD NOT BE TEED UP, THAT MR. AMIRI'S CASE WOULD

11   NOT BE TEED UP FOR THE CALENDAR ON THURSDAY.  SO IT MAY BE THE

12   NEXT MEETING OR THE MEETING AFTER.  I DON'T KNOW.

13         **PROBATION OFFICER:**  YOUR HONOR, CAN I GET YOUR

14   PERMISSION TO PROVIDE THE PRESENTENCE REPORT IN ORDER TO AID THEM

15   SO THEY MIGHT NOT HAVE TO DO THE FULL CAP ASSESSMENT THAT THEY

16   WOULD FROM SCRATCH IF THEY HAVE THE DOCUMENT?

17         **THE COURT:**  CERTAINLY.  CERTAINLY.  SO THAT I DO THAT

18   WITHOUT ANY MAJOR SENSE OF OPTIMISM, BUT SOME SENSE OF HOPE.

19         AND THE OTHER THING I WANT TO MAKE SURE WE HAVE IS -- THAT

20   WE HAVE, THAT IF WE DO COME BACK HERE FOR SENTENCING THAT WE HAVE

21   THE RESTITUTION ALL STRAIGHTENED OUT.

22         SO WHAT DO WE NEED TO DO TO MAKE THAT HAPPEN BEFORE THE NEXT

23   SENTENCING?

24         **MS. HARRIS:**  YOUR HONOR, AS I SAID, I DID SUBMIT A

25   BINDER TO THE COURT, AND I HOPED THAT THE COURT DID RECEIVE MY

1    BINDER.

2              **THE COURT:**  I DID.

3              **MS. HARRIS:**  OKAY. SO THEN THAT SHOULD BE THE

4    GOVERNMENT'S FINAL ESTIMATION OF THE RESTITUTION CLAIMS, YOU

5    KNOW. I HAVE, AS I SAID, MEET AND CONFERRED WITH THE DEFENSE.

6    THEY ASKED FOR AN EVIDENTIARY HEARING TODAY. I CAME PREPARED TO

7    DO SUCH A HEARING IF YOUR HONOR WISHES TO DO SO.

8         THAT BEING SAID, THE BINDER THAT I SUBMITTED TO THE COURT

9    DOES HAVE TABS WITH EACH OF THE -- WITH DOCUMENTATION FOR EACH OF

10   THE CLAIMS THAT THE GOVERNMENT IS ASKING FOR.

11        AND ALSO, JUST IN TERMS OF HOW THE COURT SHOULD REVIEW THE

12   MATERIALS, IN THE GREEN COLUMN BASICALLY THE DEFENSE ASKED THE

13   GOVERNMENT FOR, I GUESS YOU COULD SAY, PROOF OF THE DEFENDANT'S

14   ACTUAL COMMISSION OF THE FRAUD.

15        SO I LISTED ITEMS IN THAT COLUMN IN THE GREEN COLUMN THAT

16   INDICATE THAT MR. AMIRI COMMITTED THESE FRAUDS.  AND MOST OF THAT

17   INFORMATION IS GOING TO BE FOUND IN THE INCIDENT REPORTS AND THE

18   SELECTED PII, THAT IS PERSONAL IDENTIFYING INFORMATION THAT WAS

19   RECOVERED FROM MR. AMIRI DURING HIS TWO ARRESTS.

20        THE VAST MAJORITY OF THIS INFORMATION WAS EITHER FOUND ON

21   MR. AMIRI OR WAS PROVIDED DIRECTLY BY THE VICTIMS HERE.  AND THE

22   COURT CAN ASK, YOU KNOW, WHATEVER QUESTIONS IT WANTS TO.  BUT FOR

23   THE MOST PART IT SHOULD BE PRETTY SELF-EXPLANATORY.

24              **THE COURT:**  I ASSUME THIS IS MANDATORY RESTITUTION.

25   RIGHT?

 1          **MS. HARRIS:**  YES, IT'S A VICTIM CASE, YOUR HONOR.  YES.

 2          **THE COURT:**  AND SO -- BUT THE BURDEN IS STILL ON THE

 3    GOVERNMENT TO PROVE THE AMOUNT OF RESTITUTION?

 4          **MS. HARRIS:**  IT'S BY PREPONDERANCE OF THE EVIDENCE,

 5    YOUR HONOR.

 6          **THE COURT:**  RIGHT.

 7          **MR. OTT:**  AND SO BASICALLY IT'S THE GOVERNMENT HAS

 8    SUBMITTED WHAT IT SUPPOSES ARE THE RESTITUTION CLAIMS FOR THIS

 9    CASE. MOST OF THIS STUFF IS BASED ON CARDS THAT WERE RECOVERED,

10    ACCESS DEVICES RECOVERED FROM MR. AMIRI AT THE TIME OF HIS

11    ARREST.

12          SO CHARGES THAT FLOW FROM THOSE ACCESS CARDS WOULD BE PROPER

13    AVENUES FOR RECOVERY FOR THE VICTIM MERCHANTS THAT SUFFERED AND

14    HAD TO REIMBURSE THE ACTUAL INDIVIDUALS WHOSE NAMES WERE USED TO

15    OPEN THE ACCOUNTS.

16          **THE COURT:**  AND IF THERE WERE AN EVIDENTIARY HEARING,

17    WHAT WOULD THAT ENTAIL?  LIKE WHO?  DID YOU BRING WITNESSES TO

18    TESTIFY?

19          **MS. HARRIS:**  YOUR HONOR, TO BE PERFECTLY FRANK I'VE

20    NEVER ACTUALLY DONE AN EVIDENTIARY HEARING FOR A RESTITUTION

21    CASE.  FOR THE MOST PART, IF IT'S WITHIN THE RANGE AGREED UPON

22    AND THERE'S SUFFICIENT PROOF AND DOCUMENTATION OF EACH CLAIM,

23    THERE NEVER HAS TO BE ANYBODY TESTIFYING.  I THINK THE DOCUMENTS

24    SPEAK FOR THEMSELVES.

25          AND, ALSO, TO THE EXTENT THAT THE COURT HAS ANY CONCERNS

1    ABOUT WHETHER OR NOT, YOU KNOW, CERTAIN THINGS ARE SUPPORTED BY

2    SUFFICIENT INDICIA OF RELIABILITY, THE RULES OF EVIDENCE DON'T

3    REALLY APPLY.

4         I BELIEVE THAT'S UNDER FEDERAL RULE OF EVIDENCE 1101 (D). AT

5    ANY RATE, I THINK THE GOVERNMENT'S SUBMISSION SHOULD SPEAK FOR

6    ITSELF.

7         IF THE COURT HAS ANY QUESTIONS I WOULD ASK THE COURT TO

8    IDENTIFY THOSE QUESTIONS FOR THE GOVERNMENT SO THAT IF WE HAVE

9    ADDITIONAL DOCUMENTATION WE CAN PROVIDE IT TO YOU AND DEFENSE

10   COUNSEL.

11        BUT FOR THE MOST PART, YOU'LL SEE THAT EVERYTHING ON THIS

12   CHART AND THE DOCUMENTS USED TO SUPPORT IT WAS, A, PRODUCED IN

13   DISCOVERY TO THE DEFENSE AND, B, INCLUDED IN THIS BINDER HERE.

14   SO --

15             **MS. NALL:**  YOUR HONOR, REAL QUICK.  THIS IS UNUSUAL FOR

16   US, TOO.  WE HAVE NEVER DONE OR REQUESTED AN EVIDENTIARY HEARING.

17   WE'RE DOING IT HERE BECAUSE HE'S ACTUALLY GOING TO DO -- IT'S NOT

18   JUST SURE -- BUT $2.5 MILLION ON HIS -- AND HE'LL MAKE --

19   MS. GILBERT IS PREPARED TO TALK TO YOU ABOUT THE PROCEDURAL --

20             **MS. GILBERT:**  OR SOMETHING LIKE THAT.

21             **THE COURT:**  SOMEBODY WHO CAN ACTUALLY TALK.

22             **MS. GILBERT:**  THERE YOU GO.  THERE ARE FIVE ENTRIES OR

23   FIVE SORT OF GROUPS OF ENTRIES ON THE SPREADSHEET THAT WE DON'T

24   BELIEVE THE GOVERNMENT HAS MET ITS BURDEN AND WE DON'T BELIEVE

25   THE DOCUMENTATION SUPPORTS.

1      THAT TOTALS $11,765.04.  I HAVE HIGHLIGHTED THOSE ON COPIES

2  OF A SPREADSHEET I'M HAPPY TO PROVIDE TO THE GOVERNMENT AND TO

3  YOU EITHER NOW OR WHENEVER IS APPROPRIATE.

4           **THE COURT:**  MIGHT AS WELL DO IT NOW.

5           **MS. GILBERT:**  OKAY.  I'LL DO THAT.

6           **THE COURT:**  FILE IT WITH ME, BUT GIVE IT TO THE

7  GOVERNMENT NOW.

8           **MS. GILBERT:**  WELL, COUNSEL WAS SAYING THAT IF YOU DO

9  DECIDE THAT AN EVIDENTIARY HEARING IS REQUIRED THAT YOU WOULD

10  GIVE US NOTICE AND SET IT.

11          **THE COURT:**  RIGHT.  BUT WHAT WOULD YOU PROPOSE WE DO AT

12  THE EVIDENTIARY HEARING?

13          **MS. GILBERT:**  I WOULD PROPOSE THAT THE GOVERNMENT MAKE

14  A SHOWING AS TO THE FIVE ENTRIES THAT I HAVE QUESTIONS ABOUT THAT

15  HAVE SUFFICIENT INDICIA OF RELIABILITY TO SATISFY YOUR HONOR.

16      FOR EXAMPLE, TWO OF THEM ARE FROM -- ARE LISTED AS LOCATED

17  IN LOS ANGELES, AND THERE'S BEEN NO ALLEGATION OF ANY CONDUCT IN

18  LOS ANGELES OR ANY EVIDENCE THAT MR. AMIRI WAS IN LOS ANGELES ON

19  THE DATE THAT THAT APPEARS ON THE CHART. THAT'S AN EXAMPLE.

20          **THE COURT:**  OKAY. WELL, I HAVEN'T -- YOU KNOW, I

21  HAVEN'T DIVED INTO THE RESTITUTION ISSUE DEEPLY YET, BUT I WANT

22  TO URGE THE PARTIES TO JUST DO WHATEVER THEY CAN TO SORT OF DRILL

23  DOWN ON WHAT NEEDS -- WHAT IS AGREED AND WHAT IS NOT AGREED TO

24  MAKE IT EASIER FOR ALL OF US, IF NECESSARY.

25      AND IT WILL BE NECESSARY NO MATTER WHAT. SO OKAY.

 1              **PROBATION OFFICER:**  YOUR HONOR?

 2          **THE COURT:**  YES.

 3              **PROBATION OFFICER:**  SHOULD THE DEFENDANT BE ACCEPTED TO

 4     CAP AND PARTICIPATE IN THAT PROGRAM THAT DELAYS THE PROCESS, YOU

 5     KNOW, 12 MONTHS TO 14 MONTHS, DEPENDING ON HOW LONG IT TAKES HIM

 6     TO COMPLETE THE PROGRAM, WOULD THERE BE A MECHANISM, I'M THINKING

 7     IN TERMS OF THE VICTIMS, FOR THEM START GETTING RESTITUTION?

 8          **THE COURT:**  I CAN'T IMAGINE THAT WE WON'T BE ABLE TO

 9     COME UP WITH SOMETHING.

10              **PROBATION OFFICER:**  BECAUSE I THINK THAT'S AN IMPORTANT

11     PART FOR THE VICTIMS AND THE GOVERNMENT TO BE MADE WHOLE.

12          **THE COURT:**  I CAN'T IMAGINE THERE WOULD BE A PROBLEM

13     WITH ME SIGNING A STIPULATED ORDER REQUIRING MR. AMIRI -- WHETHER

14     IT'S AS A CONDITION OF CONTINUED RELEASE, YOU KNOW, PENDING

15     SENTENCING OR SOMETHING LIKE THAT.  YOU KNOW, I DON'T -- I MEAN,

16     YOU ALL SHOULD DO YOUR HOMEWORK ON THAT.

17          BUT I CAN'T BELIEVE THAT I WON'T HAVE THE AUTHORITY TO

18     REQUIRE MR. AMIRI TO PAY VICTIMS, IF HE WERE ACCEPTED INTO THE

19     CAP PROGRAM.

20          **MS. NALL:**  JUST TELL US WHERE TO SEND THE CHECK.  WE'RE

21     HAPPY TO.

22          **THE COURT:**  OKAY.  WELL, YOU FIGURE OUT WHAT I SHOULD

23     TELL YOU ABOUT THAT.

24          **MS. NALL:**  OKAY.

25          **THE COURT:**  I MEAN, DO YOUR HOMEWORK ON THAT.

1          **MS. NALL:**  YES, YOUR HONOR.

2          **THE COURT:**  I CAN'T IMAGINE I WOULD LACK THE AUTHORITY

3    TO DO THAT.

4          **MS. NALL:**  WE'LL DO THAT.

5          **THE COURT:**  OKAY. THANK YOU.

6          **MS. NALL:**  THANK YOU VERY MUCH, YOUR HONOR.

7          **MS. HARRIS:**  THANK YOU.

8          **THE CLERK:**  COURT IS ADJOURNED.

9            (THEREUPON, THIS HEARING WAS CONCLUDED.)

10   STENOGRAPHY CERTIFICATION

11          "I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
     FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."

12          MARCH 28, 2018
            /S/KATHERINE WYATT

13   _____

14

15

16

17

18

19

20

21

22

23

24

25